UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AIG PROPERTY CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LEE ROSENTHAL and RYAN DENVER,<br><br>Defendants. | CIVIL ACTION NO. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

This is an action brought by the Plaintiff AIG Property Casualty Company ("AIG") seeking declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure to determine the rights, obligations and liabilities of the parties under a policy of insurance issued by AIG to Lee Rosenthal ("Rosenthal"). This action seeks a determination that AIG is not obligated to defend and/or indemnify Rosenthal in connection with claims asserted by Ryan Denver ("Denver") in an action entitled *In The Matter of Ryan Denver as Owner of M/V Make It Go Away, For Exoneration From or Limitation of Liability*, Civil Action No. 1:21-cv-11841-ADB in Admiralty, pending in the United States District Court for the District of Massachusetts (the "*Denver Action*"). More specifically, AIG seeks a declaration that it is not obligated to defend and/or indemnify Rosenthal in the *Denver Action* because he breached his duty to cooperate under the AIG policy by failing to submit to an examination under oath and, in any event, coverage for the *Denver Action* is precluded by the AIG policy's "Intentional Acts" exclusion.[1]

---

[1] AIG may have additional coverage defenses applicable to the *Denver Action*, all of which are preserved, and none of which are waived, by AIG bringing this Complaint on these primary grounds, both of which obviate AIG's duty to defend or indemnify Mr. Rosenthal.

1

## THE PARTIES

1. AIG is an Illinois corporation with a principal place of business located at 1271 Avenue of the Americas Floor 37, New York, New York 10020.

2. The Defendant Rosenthal is a Massachusetts resident with an address of 37 Paine Avenue, Beverly, Massachusetts 01915.

3. Upon information and belief, Denver is a Massachusetts resident with an address of 50 Liberty Drive Unit 6F, Boston, Massachusetts 02210. Denver is included as a party to this declaratory suit as he is the plaintiff in the *Denver Action* and thus a necessary party per Fed. R. Civ. P. 19(a).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue properly lies with this Court pursuant to 28 U.S.C. § 1391 since the events giving rise to this complaint substantially arose and occurred in this judicial district.

## FACTS

### The *Denver Action*

6. On or around November 12, 2021, Denver filed a Petition for Exoneration From or Liability of Liability in the *Denver Action*. A copy of the Petition is attached as **Exhibit A**.

7. On or around January 3, 2022, Denver filed a Third-Party Complaint in the *Denver Action* against Rosenthal. A copy of the Third-Party Complaint is attached as **Exhibit B**.

8. According to the *Denver Action's* Third-Party Complaint, on July 17, 2021 at approximately 2:47am, Denver was navigating his vessel, the M/V MAKE IT GO AWAY, in Boston Harbor near Castle Island.

9. Denver has several passengers on his vessel, including Jeanica Julce.

10. At approximately 2:47am, Denver's vessel allided with a fixed navigational aid (Daymarker # 5) near Castle Island and his vessel began taking on water.

11. As a result, Denver and his passengers were forced to enter the water.

12. Rosenthal, who was operating a separate vessel with several passengers, soon came upon the accident scene.

13. According to the *Denver Action's* Third-Party Complaint, the following events occurred next, in and around 2:47 am in the Boston Harbor:

    a. "Rosenthal and his passengers heard a broadcast over the radio from the T/V STEVEN J. LEAMAN, which was located near Castle Island, which notified Rosenthal and his passengers that people were in the water near Daymarker # 5."

    b. "Rosenthal and his passengers heard a broadcast over the STEVEN J. LEAMAN'S loudspeaker, which directed them to assist the people in the water" and that the "STEVEN J. LEAMAN'S spotlight was directed at the scene of the accident so Rosenthal and his passengers could render aid."

    c. Rosenthal allegedly navigated his vessel towards Daymarker # 5, stopped his vessel and "Denver and others began moving towards Rosenthal's vessel in belief and reliance that aid was to be provided."

    d. Additionally, "Rosenthal's passengers opened up the fish door on Rosenthal's vessel in order to render aid to Denver and his passengers."

  e. Then "Rosenthal and his passengers heard Denver ask Rosenthal and his passengers [to] help Denver's friend, Jeanica Julce, who was in the water nearby."

  f. Then, "without notice, Rosenthal's vessel departed the scene at a high rate of speed and failed to provide any assistance to Denver and the seven (7) passengers, who were either in the water, or holding on to the wreckage, or Daymarker # 5."

  g. The fish door of Rosenthal's vessel was still open and Rosenthal's passengers were yelling "What the hell are you doing?"

  h. The captain of the T/V STEVEN J. LEAMAN "called Rosenthal again as he departed, stressing that there were people in the water and requesting him to render assistance in efforts to prevent Rosenthal from departing the scene, but Rosenthal continued to operate his vessel away from the scene."

  i. Jeanica Julce died by drowning "at some point after Rosenthal's vessel departed[.]"

14. The *Denver Action's* Third-Party Complaint further alleges that "[p]ursuant to 46 U.S.C. § 2304, Rosenthal, as master of his vessel, was required to render assistance to Denver and the seven (7) passengers in the water" and that Rosenthal "violated his duty to provide assistance pursuant to 46 U.S.C. § 2304" as he "consciously chose not to assist or render aid to the people in the water."

15. As a result, the *Denver Action's* Third-Party Complaint claims that "Rosenthal acted outrageously, recklessly, and with callous indifference under the circumstances by departing the scene without rendering assistance" and that "Jeanica Julce would not have died but for Rosenthal's negligence, recklessness and callous indifference in failing to provide aid and assistance."

**The AIG Massachusetts Homeowners Policy**

16. AIG issued Massachusetts Homeowners Policy No. PCG 0065407377 to Rosenthal for the Policy Period of July 15, 2021 to July 15, 2022 (the "Policy"). A copy of the Policy is attached as **Exhibit C**.

17. The preamble to the Policy provides:

> The insurance company named on your Declarations Page will provide the insurance described in this policy. You agree to pay the premium and comply with your responsibilities described in this policy.
>
> Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine your rights and duties, and what is and is not covered. We have no duty to provide coverage unless there has been full compliance with policy PART IV – CONDITIONS.

18. Subject to its terms and conditions, **PART III – LIABILITY** provides coverage for "**damages** an **insured person** is legally obligated to pay for **personal injury** or **property damage** caused by an **occurrence**[.]"

19. The Policy defines "**occurrence**," as applicable to the LIABILITY section of the Policy as:

> **a.** A loss or an accident, to which this insurance applies, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and result in **personal injury** or **property damage**; or
>
> **b.** An offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in **personal injury** or **property damage**.

20. **PART III – LIABILITY** was issued with Exclusion **3. Watercraft**, which provides that the Policy does not apply to:

**Personal injury** or **property damage** arising out of the ownership, maintenance, use, operation, loading or unloading of any **watercraft**:

    a.    That is twenty-six (26) feet or more in length or fifty (5) or more horsepower and which is owned by an **insured person** or furnished or rented to an **insured person** for longer than thirty (30) days;

    b.    Used for any **business** or commercial purpose; or

    c.    Used for participation in or practice for competitive racing (except sailboats less than twenty-six (26) feet in length).

21.    **PART III – LIABILITY** was also issued with Exclusion **17.** Intentional Acts, which provides that the Policy does not apply to:

> **Personal injury** or **property damage** resulting from any criminal, willful, intentional or malicious act or omission by any person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, **property damage** or **personal injury**. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to **bodily injury** if the **insured person** acted with reasonable force to protect any person or property.

22.    Under **PART IV – CONDITIONS** of the Policy, Paragraph **B**. "Your Duties After a Loss", as amended by the Massachusetts Homeowners Amendatory Endorsement, provides in relevant part:

> In the event of an **occurrence** which is likely to involve this policy, or if you or any other **insured person** under this policy *is sued in connection with an **occurrence** which may be covered under this policy*, you or an **insured person** must:

* * *

  **6.**  [as] [w]e may reasonably require you to:

    **a.**  Exhibit the damaged property;

    **b.**  Provide us with records and documents pertinent to the loss and permit us to make copies; and

    **c.**  Submit to an examination under oath, while not in the presence of another **insured person**, and sign the same[.]

(Emphasis supplied with italics.)

## AIG's Coverage Position

23. Rosenthal provided AIG with first notice of the *Denver Action* and his request for coverage on January 20, 2022

24. By letter dated February 16, 2022, AIG provided Rosenthal with its initial coverage position for the *Denver Action* whereby it acknowledged the potential for coverage and reserved its rights with regard to several Policy provisions, including Exclusion **3. Watercraft** and Exclusion **17.** Intentional Acts. A copy of AIG's February 16, 2022 letter to Rosenthal is attached as **Exhibit D**.

25. Additionally, in its February 16, 2022 letter, AIG requested, consistent with Rosenthal's duty to cooperate under the Policy, information and documents, particularly with regard to the **watercraft** Rosenthal was operating during the events described in the *Denver Action* to assist with its coverage investigation.

26. By email dated February 24, 2022, Rosenthal's counsel responded to AIG' February 16, 2022 letter and asserted that AIG was obligated to pay Rosenthal's defense costs immediately. A copy of Rosenthal's counsel's February 24, 2022 email is attached as **Exhibit E**.

27. By letter dated March 22, 2022, AIG reiterated its outstanding requests for documents and information and informed Rosenthal that his delay in providing same was "impeding AIG's ability to confirm or deny coverage under the Policy for the *Denver Action*." A copy of AIG's March 22, 2022 letter is attached as **Exhibit F**.

28. By emails dated March 28 and 29, 2022, counsel for Rosenthal partially responded to AIG's requests for information and documents. In particular, Rosenthal's responses indicated that the vessel that he was operating during the events described in the *Denver Action* was his father's vessel to which he possessed a key. Copies of the March 28 and 29, 2022 emails are attached as **Exhibit G**.

29. On May 24, 2022, still lacking information necessary to be able to confirm or deny coverage for the *Denver Action* under the Policy, counsel for AIG requested via email that Rosenthal submit to an examination under oath as provided for in the Policy. A copy of the May 24, 2022 email is attached as **Exhibit H**.

30. Counsel for Rosenthal responded to AIG's request for an examination under oath by letter dated June 9, 2022. A copy of the June 9, 2022 letter is attached as **Exhibit I**.

31. In his June 9, 2022 letter, Rosenthal's counsel asserted that the condition providing for a examination under oath "relates only to 'damaged property' as described in D. Additional Coverages. 1. Damaged Property for situations in which an insured person destroys or damages other people's property. In such situations, Condition 6 may require an insured to '[s]ubmit to separate examination under oath."

32. AIG responded by letter dated June 22, 2022 and informed Rosenthal's counsel that the Policy, including **PART III, LIABILITY**, "does require that Mr. Rosenthal submit to an examination under oath ('EUO') and his refusal to do so would constitute a breach of his duty to

cooperate, both under the [] Policy and at law[.]" A copy of AIG's June 22, 2022 letter is attached as **Exhibit J**.

33.  On August 1, 2022, having received no response from Rosenthal or his counsel, AIG sent a follow-up letter to Rosenthal's counsel. A copy of AIG's August 1, 2022 letter is attached as **Exhibit K**.

34.  AIG's August 1, 2022 letter stated that:

> [i]t has been over a month since the [June 22, 2022] letter was sent to you, and we have not received any response as to Mr. Rosenthal's willingness to submit to an EUO or his availability. Accordingly, AIG again renews its request that Mr. Rosenthal submit to an EUO and asks that you provide his availability as soon as possible. Please be advised that if we do not receive a response to this letter by August 31, 2022, AIG will construe Mr. Rosenthal's failure to response as a refusal to submit to an EUO which will continue to hinder AIG in its ability to either confirm or deny coverage.

35.  By letter dated August 15, 2022, counsel for Rosenthal formally responded to AIG's June 22, 2022 letter and asserted that "examinations under oath are limited to first party claims for loss of property under the AIG policy…There is absolutely no basis to assert it is somehow expanded to all third party and first party claims which may be provided coverage." A copy of Rosenthal's counsel's August 15, 2022 letter is attached as **Exhibit L**.

36.  An actual controversy has arisen and presently exists between AIG and Rosenthal regarding whether: (1) Rosenthal has an obligation under the Policy to submit to an examination under oath; (2) whether Rosenthal breached his duty to cooperate under the Policy by his continued refusal to submit to an examination under oath; and (3) whether the Policy provides coverage to Rosenthal for the *Denver Action*.

## COUNT I – DECLARATORY JUDGMENT
### (Duty to Submit to an Examination Under Oath)

37. AIG restates and incorporates the allegations of Paragraphs 1 – 36 as if fully stated herein.

38. The preamble to the Policy provides:

> The insurance company named on your Declarations Page will provide the insurance described in this policy. You agree to pay the premium and comply with your responsibilities described in this policy.
>
> Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine your rights and duties, and what is and is not covered. We have no duty to provide coverage unless there has been full compliance with policy PART IV – CONDITIONS.

39. **PART IV – CONDITIONS** of the Policy, Paragraph **B**. "Your Duties After a Loss", as amended by the Massachusetts Homeowners Amendatory Endorsement, provides in relevant part:

> In the event of an **occurrence** which is likely to involve this policy, or if you or any other **insured person** under this policy is sued in connection with an **occurrence** which may be covered under this policy, you or an **insured person** must:
>
> * * *
>
> **6.** [as] [w]e may reasonably require you to:
>
>     **a.** Exhibit the damaged property;
>
>     **b.** Provide us with records and documents pertinent to the loss and permit us to make copies; and
>
>     **c.** Submit to an examination under oath, while not in the presence of another **insured person**, and sign the same[.]

40. The above Policy provisions obligate Rosenthal to submit to an examination under oath "[i]n the event of an **occurrence** which is likely to involve this policy, or if you or any other **insured person** under this policy is sued in connection with an **occurrence** which may be covered under this policy." Such obligation is not, by any terms of the Policy, confined to the section entitled "D. Additional Coverages. 1. Damaged Property."

41. AIG's request for an examination under oath was reasonable in order for it to confirm or deny coverage for the *Denver Action*.

## COUNT II – DECLARATORY JUDGMENT
### (Breach of the Duty to Cooperate)

42. AIG restates and incorporates the allegations of Paragraphs 1 – 41 as if fully stated herein.

43. The Policy obligates Rosenthal to submit to an examination under oath.

44. AIG has "no duty to provide coverage unless there has been full compliance with policy PART IV – CONDITIONS."

45. Rosenthal's position that an examination under oath is confined to claims under Paragraph **D**.1 "Damaged Property" of **PART III – LIABILITY** is erroneous and not supported by the Policy language or the law.

46. Rosenthal's refusal to submit to an examination under oath constitutes a breach of his duty to cooperate under the Policy.

47. AIG is entitled to deny coverage for the *Denver Action* based upon Rosenthal's breach of the duty to cooperate.

**COUNT III – DECLARATORY JUDGMENT**
**(Intentional Acts Exclusion)**

48. AIG restates and incorporates the allegations of Paragraphs 1 – 47 as if fully stated herein.

49. Exclusion **17. Intentional Acts** provides that the Policy does not apply to:

> **Personal injury** or **property damage** resulting from any criminal, willful, intentional or malicious act or omission by any person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, **property damage** or **personal injury**. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to **bodily injury** if the **insured person** acted with reasonable force to protect any person or property.

50. The *Denver Action's* Third-Party Complaint alleges that Rosenthal violated 46 U.S.C. § 2304, which carries criminal penalties.

51. 46 U.S.C. § 2304 provides that:

> (a)(1) A master or individual in charge of a vessel shall render assistance to any individual found at sea in danger of being lost, so far as the master or individual in charge can do so without serious danger to the master's or individual's vessel or individuals on board…
>
> (b) A master or individual violating this section shall be fined not more than $1,000, imprisoned for not more than 2 years, or both.

52. Additionally, the *Denver Action's* Third-Party Complaint alleges that "Rosenthal consciously chose not to assist and render aid to the people in the water" and that "[a]s a direct, foreseeable, and proximate result of Rosenthal's gross negligence, recklessness, and conscious disregard for the safety of others, Jeanica Julce died."

53. Exclusion **17.** precludes coverage for the *Denver Action* because it alleges **personal injury**, namely Jeanica Julce's death, caused by criminal, willful acts and/or omissions by Rosenthal and alleges acts and/or omissions by Rosenthal which would be expected by a reasonable person to cause **personal injury**.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff AIG requests that the Court enter Judgment as follows:

(a) Declaring that Rosenthal was obligated under the Policy's terms to submit to an examination under oath;

(b) Declaring AIG is entitled to deny coverage for the *Denver Action* based on Rosenthal's breach of the duty to cooperate by refusing to submit to an examination under oath;

(c) Declaring that Exclusion 17. of the Policy precludes coverage for the *Denver Action*; and

(d) Awarding AIG such further relief as is just and proper.

The Defendant,
AIG PROPERTY CASUALTY COMPANY
By its attorneys,

*/s/ Lincoln A. Rose*
Tamara Smith Holtslag, BBO#634027
Lincoln A. Rose, BBO#691797
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100
tsmith@peabodyarnold.com
lrose@peabodyarnold.com

Dated: August 31, 2022